RICHARD M. DAVIS, Appellant-Respondent,
v.
JUDITH K. DAVIS, Appellee-Petitioner.
No. 31A01-0602-CV-59
Court of Appeals of Indiana.
December 18, 2006
MATTHEW JON McGOVERN, Evansville, Indiana, ATTORNEY FOR APPELLANT.
LEAH S. FINK, Corydon, Indiana, ATTORNEY FOR APPELLEE.

MEMORANDUM DECISION
BAKER, Judge.
Appellant-respondent Richard M. Davis appeals from the trial court's decree of dissolution of the marriage between Richard and appellee-petitioner Judith K. Davis. Richard argues that the trial court erred in dividing the marital estate, raising the following specific claims of error: (1) the trial court erred in calculating and dividing the 2003 and 2004 crop proceeds from the parties' farm; (2) the trial court erred in failing to credit Richard with two alleged pretrial distributions of marital assets; (3) the trial court erred in accepting Judith's valuation of certain marital assets; (4) the trial court erred in failing to credit Richard with debt payments that he made on certain marital property following the final date of separation; (5) the trial court erred in dividing future royalties from an oil and gas lease on the parties' farm; and (6) the trial court erred in awarding Judith half of the value of a barn when the barn was allegedly included in the valuation of the farm, of which Judith received half the value. We affirm in part, reverse in part, and remand with instructions included herein.

FACTS
Richard and Judith were married on March 19, 1977, and two children, both now adults, were born of the marriage. Prior to the marriage, Richard and his brother had purchased and paid for a fifty-acre tract of land. At the time of the marriage, Richard and his brother split two acres from this parcel, and Richard and Judith built their marital residence on those two acres. Richard and his brother farmed the remaining forty-eight-acre tract of land (the 48-Acre Farm) together until approximately ten years before the final hearing herein, at which time Richard began farming the land without his brother's assistance and paying his brother 1/8 of the crop receipts. Richard and Judith erected a $10,000 barn on the 48-Acre Farm during their marriage.
Richard and Judith also purchased a 110-acre tract of land (the 110-Acre Farm), which contained 86 acres of crop land. He also leased three other parcels of crop land and farmed that land as well as the crop land on the 48-Acre and 110-Acre Farms. Judith assisted Richard with the farming operations and testified that they farmed nearly five hundred acres of land altogether. Tr. p. 142-43. Richard and Judith agreed that the yearly net profit from all of the farms combined averaged approximately $13,000. Judith also testified that she had not helped with any farming operations since 2003.
Judith filed a petition for dissolution of marriage on June 9, 2003, though she did not move out of the marital home until January 1, 2004. During the pendency of the dissolution proceedings, Richard made all mortgage payments on the 110-Acre Farm and paid the parties' property taxes and insurance. Richard also testified that he had made all payments on the parties' son's student loan and on a combine and lawn mower following the parties' separation. Furthermore, Richard testified that he began making all mortgage payments in October 2003 and that he had paid all marital bills since January 2004.
On September 8, 2004, Judith requested a payment of $50,000 from the marital estate for her support until the time of the final hearing. The trial court agreed and ordered the parties to liquidate and split an Edward Jones account, resulting in $32,531.52 for each party. According to Richard, he then took out a $17,468.48 loan to pay Judith the remaining balance. When the note on this loan matured, Richard contends that he liquidated a marital account in the amount of $11,700 and placed the remaining balance on a credit card so that he could pay the amount due on the note.
Judith accused Richard of being dishonest and obstructive throughout the dissolution proceedings, pointing to four problematic actions taken by Richard. First, he withdrew $41,262.95 from the parties' bank account in the form of a cashier's check around the time Judith filed her petition for dissolution and failed to disclose this check in his verified financial disclosure form, interrogatories, or deposition. Second, after Judith filed the petition, Richard destroyed a number of the parties' bank records. Third, although Richard stated during his deposition that he had not made any grain sales in the summer of 2003, Judith later offered grain receipts for July 2003. Fourth, Judith stated that she and Richard had an agreement to file a joint tax return for 2004, but Richard filed his return as married but separate, claiming all deductions. To remedy Richard's failure to disclose the cashier's check, the trial court ordered Richard to pay $8,500 of Judith's attorney fees, and to remedy Richard's decision to file the 2004 tax return as married but separate, the trial court ordered Richard to pay Judith $3,590 in damages.
Following a hearing, the trial court dissolved the parties' marriage on August 29, 2005, and entered findings of fact and conclusions of law at Judith's request. The trial court endeavored to divide the parties' real estate and personal property equally. As to the real estate, the trial court granted ownership of the properties to Richard and ordered him to pay Judith one-half of the value of the equity in the properties, determining that Richard owed Judith $192,225.85 for her share of the equity. As to the personal property, the trial court granted ownership of various assets to Judith and Richard, respectively, ordering Richard to pay Judith the difference between the greater value of the assets assigned to him and the lesser value of the assets assigned to Judith, minus her fifty-percent obligation on their son's student loan. The result was that Richard was required to pay Judith $26,260.44 for the personal property. Richard now appeals.

DISCUSSION AND DECISION

I. Standard of Review
At Judith's request, the trial court issued findings of fact and conclusions of law pursuant to Indiana Trial Rule 52. Our standard of review thereon is well settled:
First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.
Carmichael v. Siegel, 754 N.E.2d 619, 625 (Ind. Ct. App. 2001) (citations omitted).
The division and disposition of marital assets is entrusted to the sound discretion of the trial court and we will reverse only upon an abuse of that discretion. Eye v. Eye, 849 N.E.2d 698, 701 (Ind. Ct. App. 2006). We will neither reweigh the evidence nor judge the credibility of witnesses and will consider only the evidence most favorable to the trial court's disposition of the property. Id. Although a different conclusion might be reached in light of the facts and circumstances, we will not substitute our judgment for that of the trial court. Id. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or if the trial court has misinterpreted the law or disregards evidence of factors listed in the controlling statute. Id.

II. Division of the 2003 and 2004 Crop Proceeds
Richard argues that the trial court erred in dividing the crop proceeds from 2003 and 2004. In particular, he contends that the trial court did not have statutory authority to include the 2004 proceeds in the marital estate because the parties' final date of separation was in June 2003 and Judith testified that she has not assisted with farming operations since 2003. Furthermore, Richard avers that the evidence does not support the trial court's valuation of the crop proceeds or the farming expenses.
In dividing the marital estate, the trial court included the 2003 and 2004 crop proceeds from the parties' farms. It used Judith's approximation of the value of the proceedsapproximately $60,000 per yearsubtracted approximately half of the proceeds to give credit to Richard for the farming expenses, and awarded the remaining net value to Richardapproximately $30,000 per year.

A. 2004 Proceeds
The trial court's authority to divide marital property is governed by Indiana Code section 31-15-7-4(a), which states that the court has authority to divide property that was (1) owned by either spouse before the marriage; (2) acquired by either spouse in his or her own right after the marriage and before final separation of the parties; or (3) acquired by their joint efforts. It is well established that property acquired after the date of final separation may not be included in the pot of divisible marital assets unless the property is acquired by the parties' joint efforts. Ross v. Ross, 638 N.E.2d 1301, 1303 (Ind. Ct. App. 1991). For the purpose of Indiana Code section 31-15-7-4, the date of final separation is "the date of filing of the petition for dissolution of marriage . . . ." Ind. Code § 31-9-2-46.
Here, the date on which Judith filed the petition for dissolution of marriage was June 9, 2003. The trial court, therefore, only has authority to divide property acquired after that date that was acquired by the parties' joint efforts. Judith, however, testified that she has not assisted with farm operations since 2003. Consequently, the 2004 crop proceeds may not be included in the pot of divisible marital assets.[1] We reverse the trial court on this basis, therefore, and direct it to amend the dissolution decree accordingly.

B. 2003 Proceeds
As to the 2003 crop proceeds, Richard argues that the trial court's valuation thereof is not supported by the evidence. Richard submitted evidence establishing that the 2003 crop proceeds totaled $52,998.08. Judith testified that she believed that the 2003 crop proceeds totaled $60,152.79. Tr. p. 173. She based this opinion on her records and the fact that Richard had withheld at least three receipts for grain sales in the month of July 2003. If the trial court's chosen valuation of property is within the range of values supported by the evidence, the trial court has not abused its discretion. Balicki v. Balicki, 837 N.E.2d 532, 536 (Ind. Ct. App. 2005), trans. denied. Here, the trial court determined, based upon the evidence before it, that Judith's valuation of the 2003 crop proceeds was accurate. Inasmuch as $60,152.79 was within the range of values supported by the evidence, we do not find that the trial court abused its discretion in reaching this conclusion.
The trial court went on, however, to find that Richard "should receive some credit for operating costs, expenses and labor in relation to the farming operation . . . ." Appellant's App. p. 163. After deducting Richard's costs in the amount of $30,076.40, the trial court awarded Richard all of the 2003 farm profits, totaling $30,076.39. The trial court gave no indication as to how it arrived at the conclusion that Richard's costs totaled $30,076.40, and indeed, there is no evidence in the record supporting this figure. The only evidence in the record regarding the 2003 farming expenses stems from Richard's 2003 tax return, which claims a total of $74,830.80 in farming expenses for the year. Id. at 254. It may be that, given Richard's omission of certain grain sale receipts in his 2003 tax return, the trial court chose to disregard that evidence. In its absence, however, there is no evidence supporting the figure at which the trial court arrived, inasmuch as Judith did not offer her own evidence of the 2003 expenses.
A trial court's decision to omit an asset from the marital estate is proper if the parties fail to present evidence regarding its value. Quillen v. Quillen, 671 N.E.2d 98, 103 (Ind. 1996). The trial court abuses its discretion if it assigns value to an asset when the parties fail to present evidence regarding the asset's value. Thompson v. Thompson, 811 N.E.2d 888, 917 (Ind. Ct. App. 2004), trans. denied. Here, there is no evidence in the record to support the trial court's valuation of the 2003 farming expenses.[2] Consequently, we must reverse the trial court on this basis and remand with instructions to hold a hearing on the amount of the 2003 farming expenses, reach a total based upon the evidence presented therein, and amend the dissolution decree accordingly.

III. Pretrial Distributions
Richard next argues that the trial court improperly accounted for certain pretrial distributions made by Richard to Judith from the marital estate. He also complains that the trial court improperly included in the marital estate an account that Richard allegedly liquidated to pay for a portion of the pretrial distribution to Judith. Furthermore, he contends that the trial court should have given him credit for a $5,000 pretrial payment he made to Judith that allegedly represented an advance on the 2003 crop proceeds.

A. Pretrial Payment of $17,468
In a pretrial hearing, Judith requested $50,000 from the marital assets to support herself until the final hearing, to which Richard and the trial court agreed. To that end, the trial court ordered Richard to liquidate the parties' Edward Jones account, worth a total of $65,064, and to give Judy half of that amount, totaling $32,532. Richard then transmitted a cashier's check in the amount of $17,468 to Judith for the remainder of the $50,000 total. In its dissolution decree, the trial court included the $32,532 payment but did not include the $17,468 payment among Judith's assets.
The trial court's findings indicate that it attempted to divide the marital property equally between the parties. Furthermore, the trial court did not make any findings that an unequal division of the property was appropriate. See Hurst v. Hurst, 676 N.E.2d 413, 415 (Ind. Ct. App. 1997) (holding that unequal division of marital property was erroneous in part because the trial court failed to make any findings that an unequal division was appropriate). And indeed, Judith acknowledged both that the trial court attempted to divide the marital estate equally, appellant's app. p. 207, and that she had received the cashier's check in the amount of $17,468, tr. p. 488. Under these circumstances, the trial court erred in failing to include the payment of $17,468 among Judith's assets, and we reverse its judgment on that basis and remand with instructions to amend the dissolution decree accordingly.

B. AIM Account
According to Richard, he took out a loan in the amount of $17,468 so that he could make the payment to Judith. Richard testified at trial that when the loan came due he liquidated the parties' AIM accountworth $11,849.25without the authority of the trial court or Judith, used the funds to pay off a portion of the loan, and paid the remainder of the loan by putting the balance on a credit card. Although Richard insists that he used the value of the liquidated AIM account to pay for a portion of the ordered $50,000 pretrial payment to Judith, the trial court included the value of that account among Richard's assets in the dissolution decree.
We can speculatethough it is only speculation, inasmuch as the trial court did not include any findings on the issuethat the trial court assigned the value of the AIM account to Richard because it did not find him to be a credible witness. Other than his own testimony at trial, Richard presented no evidence that the money he withdrew from the AIM account was used for Judith's benefit. Therefore, the trial court likely concluded that Richard did not present sufficient evidence that he actually used the funds from the liquidated account to make a partial payment on the loan. As noted above, it is for the trial court, as factfinder, to weigh the evidence and judge the credibility of witnesses. Eye, 849 N.E.2d at 701. Therefore, we cannot conclude that the trial court abused its discretion when it included the value of the liquidated AIM account among Richard's assets in the dissolution decree.

C. $5,000 Payment for 2003 Crop Proceeds
Richard next contends that the trial court erred in failing to credit him for a $5,000 payment he made to Judith in November 2003 as a preliminary advance on the 2003 crop proceeds. Richard has acknowledged, however, that he submitted no evidence regarding this payment to the trial court during the dissolution proceedings.[3] Tr. p. 541; Appellant's App. p. 196. Consequently, we will not address this argument on appeal.

IV. Valuation of Personal Property
Next, Richard argues that the trial court erred in accepting values assigned to certain items of personal property by the appraiser retained by Judith. In particular, he contends that in doing so, the trial court granted Judith an award that she did not request and violated Richard's right to due process.
At trial, Richard submitted two reports compiled by his appraiser. Respondent's Exhibit 9 included the items of farm equipment that Richard asked to be appraised and Respondent's Exhibit 10 included the items of personal property that Richard asked to be appraised. A number of items were omitted altogether from these exhibits. At trial, Judith agreed to the values suggested by Richard's appraiser for the items he appraised. Judith also, however, submitted Petitioner's Exhibit 20, which contained her own evidence regarding the items that were not appraised by Richard. The trial court used Richard's values for the items that he had appraised and Judith's values for the items that were omitted from Richard's appraisal.[4] Thus, the values assigned to the property by the trial court were within the range of evidence presented and we conclude that the trial court did not abuse its discretion in assigning those values. See Balicki, 837 N.E.2d at 536.
Richard contends that because Judith agreed to use the values proffered by his appraiser, the trial court erroneously made an award that she did not request in using her suggested values for certain items of personal property. See Cavazzi v. Cavazzi, 597 N.E.2d 1289, 1293 (Ind. Ct. App. 1992) (holding that it is error for a trial court to make an award that is not specifically requested by a party). It is apparent from the transcript, however, that Judith sought toand didoffer her own suggested values for those items omitted altogether from Richard's appraisal. Tr. p. 182. Consequently, the trial court's decision was not improper on this basis.
Additionally, Richard argues that the trial court's admission of Petitioner's Exhibit 20 violated his right to due process because he was not given an opportunity to object based on his reliance on Judith's assertion that she accepted his proffered values. Richard had every opportunity to object, however, and did, in fact, raise the following objection: "Well, Judge the only kind of objection that I would have is that, I would like that objection to go to the weight not the admissibility. If these are accurate as what Richard put in his disclosure then we don't object." Tr. p. 182. We cannot conclude, therefore, that the trial court in any way improperly prohibited Richard from objecting to the admission of this exhibit.

V. Debt Payments
Richard next contends that the trial court erred in calculating the value of certain assets because it failed to give credit to Richard for making payments on a number of the parties' marital debts following the date of final separation. The assets at issue are the 110-Acre Farm, a combine, a John Deere lawn mower, and the debt on their son's student loan. In calculating the value of these assets, the trial court first subtracted the debt owed on them. For the 110-Acre Farm, the combine, and the mower, the trial court subtracted the debt owed as of October 15, 2004, and for the student loan, the trial court calculated the debt as of January 1, 2004. But as noted above, the date of the parties' final separation was June 9, 2003, the date on which Judith filed her petition for dissolution. I.C. § 31-15-7-4.[5]
We have held unequivocally that the marital estate is to be closed at the time of the filing of the petition for dissolution. Bojrab v Bojrab, 786 N.E.2d 713, 722 (Ind. Ct. App. 2003), trans. granted and summarily aff'd in relevant part, 810 N.E.2d 1008 (Ind. 2004). Indeed, in Bojrab, we affirmed a portion of the dissolution decree in which the trial court calculated the net proceeds of the marital home by deducting all of the mortgage payments made by the husband following the filing of the petition for dissolution. We concluded that crediting the husband for those payments properly returned the parties to the positions they were in, respectively, when the petition was filed.[6]
Here, Judith filed the petition for dissolution on June 9, 2003. Following that date, Richard made all payments on the 110-Acre Farm, the combine, the lawn mower, and the student loan. For the farm, the combine, and the lawn mower, there was evidence of the debt remaining as of April 30, 2003, less than two months before the final date of separation. The trial court, however, relied on evidence regarding the debt remaining as of October 15, 2004, one year and four months following the final date of separation. For the student loan, there was evidence of the debt remaining as of August 5, 2003, but the trial court relied on evidence regarding the debt remaining as of January 1, 2004.[7]
The trial court was required by Bojrab to calculate the debt remaining on these assets on a date as close to June 9, 2003the date on which the marital estate closedas possible. It erred, therefore, in selecting the dates that were farthest from June 9, 2003, in calculating the value of the assets. Pursuant to Bojrab, Richard should receive credit for the payments he made on the 110-Acre Farm, the combine, the lawn mower, and the student loan, following June 9, 2003. We reverse this portion of the dissolution decree, therefore, and remand with instructions to amend it accordingly.

VI. Oil and Gas Lease
Richard next argues that the trial court erred in awarding Judith half of the future royalties from an oil and gas lease (the Lease) on the 110-Acre Farm.[8] Judith and Richard are co-lessors on the Lease, and the trial court did not order her to relinquish her interest in the Lease even though it awarded the 110-Acre Farm to Richard.
The Lease provides that if the 110-Acre Farm is divided into separate tracts, the development of the property will continue with only one Lease regulating the entire Farm. Appellant's App. p. 314. The royalties, however, are payable to all of the owners of the respective tracts comprising the 110-Acre Farm and are apportioned among the tracts based on the surface acreage thereof. Id. It is apparent, therefore, that the Lease intends that royalties be paid only to the landowners. Moreover, the Lease provides that if the farmland is assigned, the Lease runs with the land to the assigneesthus, the Lease runs with and is inextricably bound to the land. Id. We conclude, based upon these provisions in the Lease, that Judith is not entitled to receive royalties thereunder because she no longer owns any portion of the 110-Acre Farm.
Additionally, it is well established that Indiana prefers that a dissolution decree effect a complete financial parting of the ways of ex-spouses. In re Marriage of Owens, 425 N.E.2d 222, 224 (Ind. Ct. App. 1981). The rationale for this rule stems from a concern for "the paralysis inflicted upon management and control of property or business by marital strife." Id. In permitting Judith to remain a lessor and awarding her future royalties thereunder, the trial court failed to provide for a complete financial separation of the parties. Potential problems stemming from this arrangement include Richard's inability to amend, assign, or cancel the Lease without Judith's permission, not to mention the questions it raises with respect to his entitlement to sell part or all of the 110-Acre Farm in the future, should he choose to do so. Under these circumstances, this arrangement is untenable.
Finally, we again emphasize that the marital pot closes as of the date of final separationhere, June 9, 2003. Bojrab, 786 N.E.2d at 722. Future income, such as pension or retirement benefits, is not subject to division in a decree of dissolution. Neffle v. Neffle, 483 N.E.2d 767, 769 (Ind. Ct. App. 1985). Although Judith contends that the future royalty payments at issue herein are distinguishable from pension or retirement benefits, she does not articulate how, in fact, they are different. And indeed, "[t]he rationale for such exclusion [of future income] from the marital estate is that an award of this nature constitutes `alimony' or maintenance without a requisite determination of physical or mental incapacity." Id. Furthermore, future income is not a vested property interest subject to division in a marital estate. Beckley v. Beckley, 822 N.E.2d 158, 160 (Ind. 2005). The same rationales apply to the unrealized and incalculable royalty payments at issue in this case. Thus, we conclude that the trial court erred in awarding Judith future royalty payments under the Lease and in permitting Judith to remain a lessor.
That is not to say, however, that Judith is not entitled to half of the value of the Lease. The proper way for the trial court to have awarded her that value was to have taken the Lease into consideration in its valuation of the 110-Acre Farm as a whole, thereby awarding her half of the Lease's value by awarding her half of the Farm's value. It is not apparent from this record whether the trial court's valuation of the 110-Acre Farm did, in fact, take the Lease into account. The appraisal on which the trial court apparently based its valuation does not mention the Lease or any oil and gas fixtures on the land.
We remand, therefore, with instructions that the trial court order Judith to relinquish her interest in the Lease, amend the dissolution decree to remove the award of future royalty payments, and clarify whether the Lease was taken into account in its valuation of the 110-Acre Farm. If the Lease was not taken into account, we direct the trial court to consider evidence as to its value and to assign a new value to the 110-Acre Farm if necessary.

VII. The Barn
Finally, Richard argues that the trial court erred in awarding Judith half of the equity in a barn when the value of the barn$10,000 was allegedly included in the trial court's valuation of the 48-Acre Farm. Judith obtained two appraisals of the 48-Acre Farmone appraiser, who omitted the barn from his appraisal, calculated the Farm to be worth $124,000; the second appraiser, who explicitly mentioned the barn in his appraisal, calculated the Farm to be worth $105,000. The trial court adopted the latter estimate, determining the 48-Acre Farm to be worth $105,000. In addition to awarding Judith one-half of that equity, however, the trial court also awarded her one-half of the value of the barn$5,000. In the "Comments (favorable or unfavorable including any apparent adverse easements, encroachments, or other adverse conditions)" section of the appraisal adopted by the trial court, the appraiser listed the barn. Appellant's App. p. 321. It is apparent, therefore, that this appraisal takes the barn into account in arriving at the estimated value of $105,000. By awarding Judith both one-half of the value of the 48-Acre Farm and one-half of the value of the barn, the trial court improperly permitted Judith to reap a double recovery of the barn's value. It abused its discretion in doing so, and we reverse and remand with instructions to amend the decree of dissolution accordingly.

CONCLUSION
In sum, we have found as follows: (1) the trial court erred in awarding Judith half of the 2004 crop proceeds and erred in calculating the 2003 farming expenses based upon no evidence whatsoever; (2) the trial court erred in failing to include Richard's pretrial payment of $17,648 to Judith among her marital assets, erred in including the parties' liquidated AIM account among Richard's marital assets, and properly declined to credit Richard with a $5,000 pretrial payment to Judith where Richard presented no evidence of that payment to the trial court; (3) the trial court properly valued the parties' personal property; (4) the trial court erred in failing to credit Richard for the payments he made following the final date of separation on the 110-Acre Farm, the combine, the lawn mower, and the student loan; (5) the trial court erred in refusing to order Judith to relinquish her interest in the oil and gas lease on the 110-Acre Farm and in awarding her a 50% interest in future royalty payments thereunder, and must clarify whether its valuation of the 110-Acre Farm includes the value of the Lease; and (6) the trial court erred in awarding Judith one-half of the value of the barn where the barn's value was already taken into account in the trial court's valuation of the 48-Acre Farm.
The judgment of the trial court is affirmed in part, reversed, in part, and remanded with the following instructions:
(1) amend the dissolution decree to remove the award to Judith of one-half of the 2004 crop proceeds;
(2) hold a hearing on the amount of 2003 farming expenses, reach a total based upon the evidence presented therein, and amend the dissolution decree accordingly;
(3) amend the dissolution decree by including the $17,468 pretrial payment among Judith's assets;
(4) recalculate the respective values of the 110-Acre Farm, the combine, the lawn mower, and the student loan by crediting Richard with the payments he made on each asset following the final date of separation;
(5) amend the dissolution decree by removing the award to Judith of one-half of the future royalty payments under the oil and gas lease on the 110-Acre Farm, order Judith to reimburse Richard for any royalty payments he has made to her that accrued following the final date of separation, and require her to relinquish her interest in that lease;
(6) clarify whether the valuation of the 110-Acre Farm included the value of the oil and gas lease, and if the lease was not taken into consideration, hold a hearing regarding the value of the lease and amend the valuation of the 110-Acre Farm if necessary;
(7) amend the dissolution decree by removing the award to Judith of one-half of the value of the barn on the 48-Acre Farm; and
(8) recalculate the amount of the marital estate to which each party is entitled pursuant to the above instructions.
NAJAM, J., and DARDEN, J., concur.
NOTES
[1] Judith neither acknowledges nor challenges this claimed error.
[2] Normally, we would examine the record to find evidence of the expenses incurred in previous years and infer that the trial court relied upon and extrapolated from that evidence to calculate the amount of the 2003 farming expenses. However, as mentioned above, the record is devoid of such evidence.
[3] Richard presented evidence regarding this payment at the hearing on Judith's motion for rule to show cause and at the hearing on his motion to correct error, both of which occurred after the dissolution decree had been entered.
[4] There are certain items in Petitioner's Exhibit 20 for which Judith and Richard offered different suggested values. For those items, the trial court accepted Judith's valuation. As noted by the trial court, however, although Richard suggested values for these at some point during mediation, these values are not supported by the appraisals in Respondent's Exhibits 9 and 10. Consequently, the trial court properly used the values offered by Judith for these items.
[5] Judith argues that we should use January 1, 2004, as the date of final separation because that is the date on which she moved out of the marital residence. But we are compelled by statute to find that the date of final separation is the date on which she filed the petition for dissolution of marriage. I.C. § 31-15-7-4.
[6] Judith attempts to distinguish Bojrab by arguing that our decision therein was based on the fact that the wife had lived in the marital residence for over two years without making a house payment. We do not find that distinction compelling, however, inasmuch as the Bojrab holding is clearly based on the fact that the marital estate closes on the date of the filing of the petition for dissolution. Additionally, we find that Judith's earning capabilities are irrelevant to the valuation of these assets.
[7] Judith argues that the trial court is entitled to value an asset at any time between the filing of the dissolution petition and the final hearing. While that may be true, at issue here is the amount of debt remaining on these assetsa value that is fixed at any given point in time. Thus, any reduction in the amount of debt following the filing of the petition for dissolution stems solely from Richard's contribution to the debt. A spouse's contribution to the payment of debt following the filing of a dissolution petition is not marital property subject to division. Bojrab, 786 N.E.2d at 721-22.
[8] Richard and Judith are both lessors on the oil and gas lease on the 110-Acre Farm. The trial court awarded Judith 1/2 of the value of past due royalties on that lease and 1/2 of the future royalties thereunder; additionally, it declined to require her to remove herself as lessor. Richard, but not Judith, is a lessor on the oil and gas lease on the 48-Acre Farm. With respect to that lease, the trial court awarded only a 1/2 interest in the value of past due royalties under that least to Judith, giving her no interest in any future royalties.