# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 19 2019, 9:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bradley A. Rozzi
Hillis, Hillis & Rozzi
Logansport, Indiana

ATTORNEY FOR APPELLEE

Brooks B.C. Ledger
Starr Austen & Miller, LLP
Logansport, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Traci Jones,

*Appellant-Petitioner,*

v.

Marvin Jones,

*Appellee-Respondent*

June 19, 2019

Court of Appeals Case No.
18A-DC-2248

Appeal from the Cass Superior Court

The Honorable James K. Muehlhausen, Judge

Trial Court Cause No.
09D01-1709-DC-154

**Baker, Judge.**

[1]     Traci Jones (Wife) and Marvin Jones (Husband) dissolved their marriage. Wife appeals the trial court's valuation and division of property, arguing that the trial court erred in its distribution of the marital estate; by inappropriately awarding Husband a $6,000 credit; and by inappropriately ordering Wife to use part of her tax refund to pay for her attorney's fees without making Husband pay more. Finding no error, we affirm.

# Facts

[2]     Husband and Wife married in June 1994. Husband acquired the marital residence, made the initial $8,000 down-payment, and subsequently made all mortgage, utility, property tax, and insurance payments. Husband also made significant improvements to the marital residence by installing a new air conditioning system, a gas furnace, a privacy fence, a new roof, and concrete flooring in the garage. All payments came from Husband's income, which was held in a joint checking account with Wife. Husband earns over $110,000 per year at Caterpillar, Inc., and Wife earns roughly $22,000 per year at the Four County Counseling Center.[1] Additionally, Husband has a 401(k) pension account and an IRA as a benefit of his full-time employment. Husband testified that he paid the bills for the entirety of their marriage and that Wife's

---

[1] Both Husband and Wife also have part-time jobs from which they earn nominal incomes.

contributions were "largely non-monetary[.]" Tr. Vol. II p. 66. Wife primarily cared for the children and took care of the marital residence.

[3] Tax documents from 2015, 2016, and 2017 reveal that Husband paid significantly more in federal and state income taxes than Wife. *See* Appellee's App. Vol. II p. 12-14. No federal taxes were withheld from Wife's first year working full-time for the Four County Counseling Center. Wife testified that the $4,738 tax refund she received in 2018 from their joint filing was a refund of taxes that she "never paid [herself][.]" Tr. Vol. II p. 43. Wife kept almost all her income in a separate bank account or in her billfold.

[4] After the couple separated in September 2017, Wife stayed in the marital residence and Husband moved into his parents' home. On December 6, 2017, both parties signed, and the trial court approved, an Agreed Provisional Order outlining the duties and obligations of Husband and Wife until the final dissolution of their marriage. Husband was ordered to pay Wife $125 per week in child support. Even though this amount was lower than that recommended by the Child Support Guidelines, it factored in Husband's monthly payment obligations for the marital residence, which included paying the mortgage, homeowner's insurance, and gas bills. Wife was ordered to pay other household debts as well as any debts in her name.

[5] At the June 22, 2018, final dissolution hearing, the trial court requested and received evidence from Husband and Wife so that it could calculate the value of all marital assets. At the end of the hearing, the trial court noted the disparity in

income between the parties, concluding that a 60/40 division of the equity in the marital residence in favor of Wife was warranted but ordering a 50/50 split of the overall marital estate. *See* Tr. Vol. II p. 128.

[6] On July 9, 2018, the trial court issued its final Decree of Dissolution, determining that the marital residence was worth $89,500. Pursuant to the 60/40 split, the trial court awarded Husband equity in the marital residence in the amount of $32,633.60. Of that amount, $26,633.60 constituted Husband's forty percent share and $6,000 constituted a credit that the trial court awarded him for the mortgage, homeowner's insurance, and gas payments he made to Wife during the initial period of separation. Wife would continue living in the marital residence. The trial court valued the remaining disputed assets and distributed them to Husband and Wife accordingly.

[7] Additionally, of the couple's $4,738 tax refund, the trial court ordered Wife to use $735 to pay for tax preparation services and to use the remaining $4,000 to pay for her attorney's fees. Husband was ordered to pay the remaining balance of Wife's attorney's fees. Wife now appeals.

# Discussion and Decision

# I. Division of Property

[8] First, Wife argues that the trial court erred in the way in which it divided and distributed the marital estate. Specifically, Wife claims that the trial court intended to split the overall marital estate 60/40, but the way in which the trial

court distributed their assets resulted in Husband receiving a higher percentage than the trial court intended.

[9] The division of marital property and assets is a task left to the sound discretion of the trial court. *Love v. Love*, 10 N.E.3d 1005, 1012 (Ind. Ct. App. 2014). We will reverse a trial court's decision only if it is clearly against the logic and effect of the facts and circumstances before it, or if the trial court has misinterpreted the law or disregards evidence of factors listed in the controlling statute. *Id.* Additionally, we will evaluate the trial court's valuation of marital assets under the same standard of review. *In re Marriage of Nickels*, 834 N.E.2d 1091, 1095 (Ind. Ct. App. 2005). We will not reweigh the evidence, and we will consider the evidence in the light most favorable to the judgment. *Id.*

[10] Indiana Code section 31-15-7-5 instructs trial courts on how to divide marital property at the time of dissolution. The statute states, in pertinent part:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>
> > (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
> >
> > (2) The extent to which the property was acquired by each spouse:
> >
> > > (A) before the marriage; or
> > >
> > > (B) through inheritance or gift. . . .

In short, a trial court should begin with the presumption that a 50/50 split is equitable unless the parties present evidence to the contrary. And based on that proffered evidence, the trial court may order a division of property that deviates from the standard 50/50 split.

Here, while the trial court split the value of the marital residence 60/40 in favor of Wife, it divided the overall estate 50/50. Therefore, Wife's contention that any additional payments—including the $6,000 credit awarded to Husband or the order that Wife pay her own attorney's fees out of the tax refund— somehow contravene this 60/40 division are unfounded. The 60/40 division relates only to the marital residence, and the trial court acknowledged the disparity in income by awarding her greater equity. Accordingly, any argument that "[t]he [t]rial [c]ourt failed to identify a net equity figure based on the property division as a whole and thereafter, divide the property in accordance with the 60/40 division . . . as it relates to the marital residence[,]" appellant's br. p. 13, is unavailing.

Furthermore, Wife would have us reexamine the trial court's valuation of property, including Husband's IRA and 401(k) pension accounts, the marital residence, other disputed assets, and the figures proffered on her summary sheets. This amounts to a reweighing of the evidence, which we may not do. The record shows that the trial court, within its statutory authority, evaluated the earning capacity of both parties, the equity that Husband and Wife retained in the marital residence, and all other evidence to arrive at its determination.

Thus, the trial court did not err in its calculation and ultimate division of property.

# II. Credit

[13]     Next, Wife argues that the trial court erred when it awarded Husband a $6,000 credit for payments he made to maintain the marital residence before dissolution. Specifically, Wife contends that Husband already received relief in the form of reduced child support, so the credit amount constituted an unjust enrichment for Husband.

[14]     The disposition of marital assets and awards is an exercise of the trial court's sound discretion. *Eye v. Eye*, 849 N.E.2d 698, 701 (Ind. Ct. App. 2006). We will reverse a trial court's decision only if it is clearly against the logic and effects of the facts and circumstances before the court, or if the trial court has misinterpreted the law. *Hatten v. Hatten*, 825 N.E.2d 791, 794 (Ind. Ct. App. 2005). Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id.*

[15]     Wife concedes that Husband should receive some credit for the payments—mortgage, insurance, and utility—he made over the course of the initial period of separation, and there is case law affirming a trial court's ability to do so. *See Bojrab v. Bojrab*, 786 N.E.2d 713, 721-22 (Ind. Ct. App. 2003), *trans. granted and summarily aff'd in relevant part*, 810 N.E.2d 1008 (Ind. 2004). However, Wife contends that Husband received a windfall from the $6,000 credit because he

was already making reduced child support payments. In reviewing the Child Support Obligation Worksheets and the total payments Husband made over the course of the initial period of separation, we find Wife's argument unavailing. No matter the figure, the amount Husband ultimately paid for all obligations in the agreed provisional order far exceeds the amount he needed to close the gap and avoid any alleged windfall.

[16] Even though Husband made reduced child support payments in the amount of $125 per week, he was still making mortgage, homeowner's insurance, and gas payments for a marital residence he no longer inhabited. The trial court was crediting Husband for the numerous payments he made during the initial period of separation, thereby restoring the parties to their original positions. Thus, the trial court did not err in awarding Husband a $6,000 credit.

# III. Attorney's Fees

[17] Finally, Wife disputes the trial court's disposition of attorney's fees. She first argues that the trial court erred by not including the tax refund in the overall marital pot. Next, Wife contends that the trial court erred by not ordering Husband to pay for a greater portion of her attorney's fees, forcing Wife to use most of the tax refund to do so.

[18] We will reverse a trial court's award of attorney's fees only when it is clearly against the logic and effect of the facts and circumstances before the court. *In re Marriage of Gray*, 422 N.E.2d 696, 703 (Ind. Ct. App. 1981). We are not

permitted to substitute our judgment for that of the trial court merely because the same circumstances might justify a different outcome. *Id.*

[19] The trial court is not required to give reasons for its determination regarding attorney's fees. *In re Marriage of Pulley*, 652 N.E.2d 528, 532 (Ind. Ct. App. 1995). Here, Husband agreed that his half of the tax refund be applied to the payment of Wife's attorney's fees. Tr. Vol. II p. 73. Wife fails to recognize that the tax refund she received was generated almost exclusively by income she did not earn and taxes she did not pay. Both Husband and Wife testified to this. In fact, nearly one-third of Husband's income that generated the tax refund came from income he earned after the two separated in September 2017. Accordingly, the trial court distributed the entire award to Wife and then proceeded to apportion most of Wife's award to cover her attorney's fees. The trial court should have included the tax refund in the marital pot. But even if it had done so, the result would have been the same, with Wife receiving 100% of the asset. Therefore, the error was harmless.

[20] Pursuant to the trial court's broad discretion, it evaluated the tax refund, determined that Husband was the one who predominantly contributed to it, awarded it to Wife, and allocated most of it to cover Wife's attorney's fees. Given the trial court's wide latitude to fashion an equitable resolution, *see Hartley v. Hartley*, 862 N.E.2d 274, 287 (Ind. Ct. App. 2007), it did not commit reversible error by allocating the refund as it did.

[21]     Next, Wife insists that Husband should have paid more of her attorney's fees. The trial court in this instance ruled that since Wife received the entirety of the tax refund comprised of money she did not earn, Husband should not carry the burden of paying all of the attorney's fees, despite the disparity in income between the two. This decision involving distribution of an asset was well within the trial court's discretion. There is nothing in the record or in the trial court's valuation that would lead us to conclude that the trial court inappropriately allocated funds from the tax refund the way that it did. Based on these circumstances, the trial court did not err by ordering Husband to pay only a small portion of Wife's attorney's fees to make up the balance.

[22]     The judgment of the trial court is affirmed.


Najam, J., concurs.
Robb, J., concurs in part and dissents in part with a separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Traci Jones, | Court of Appeals Case No. |
| *Appellant-Petitioner,* | 18A-DC-2248 |
| v. | |
| Marvin Jones, | |
| *Appellee-Respondent,* | |

**Robb, Judge, concurring in part and dissenting in part.**

[23]  I respectfully dissent from the majority's decision that the trial court did not err in granting Husband a $6,000 credit for mortgage payments he made while the dissolution proceeding was pending.

[24]  Husband argues this case is "identical" to *Bojrab v. Bojrab*, 786 N.E.2d 713 (Ind. Ct. App. 2003),[2] and the majority cites *Bojrab* in support of its decision. However, *Bojrab* is *not* identical to this case.  In *Bojrab*, the trial court issued a

---

[2] Husband also cites *Davis v. Davis*, 2006 WL 3703262 (Ind. Ct. App. Dec. 18, 2006), in support of his position.  *Davis* is an unpublished memorandum decision, however, and citation to unpublished decisions is inappropriate and prohibited by the appellate rules.  *Hazelett v. Hazelett*, 119 N.E.3d 153, 160 (Ind. Ct. App. 2019) (citing Ind. Appellate Rule 65(D)).

temporary order giving the wife possession of the marital residence and ordering the husband to pay the mortgage, insurance, and tax obligations on the property. The final dissolution decree ordered the house to be sold; the husband to continue to make the mortgage, insurance, and tax payments pending sale; the net proceeds of the sale to be split forty percent to the husband and sixty percent to the wife; and the net proceeds to be determined by subtracting the mortgage *principal*, insurance, and tax payments made by the husband from the date of the filing of the dissolution petition. On the husband's motion to correct error, the trial court amended the decree to *also* require the husband be reimbursed out of the net proceeds of the sale for the mortgage *interest* payments he made. The wife argued this was in error, but this court held it was not: noting the marital estate closes on the day a petition for dissolution is filed, the court held that by ordering the husband be reimbursed for all payments he made following the dissolution petition, "the trial court restored the parties to their position when the petition for dissolution was filed." *Id.* at 722.

[25] Like the temporary order issued in *Bojrab*, the parties' December 2017 Agreed Provisional Order granted Wife sole possession of the marital residence during the pendency of this action and ordered Husband to pay the monthly mortgage, homeowner's insurance, and Duke Energy bills for the marital residence. Unlike *Bojrab*, however, this was an arrangement agreed upon by the parties rather than ordered by the trial court. Another important distinction is that the

parties agreed Husband would get a credit for those payments in the form of a reduced child support obligation:

> The Husband shall pay weekly child support in the amount of $125 . . . . This amount is a deviation from the Child Support Guidelines but takes into consideration the Husband's maintenance obligations . . . .

Appellant's App., Vol. II at 6. Moreover, unlike *Bojrab*, in which the trial court granted a motion to correct error to include mortgage interest in the husband's reimbursement; here, Husband expressly disclaimed that he was seeking reimbursement for anything but the reduction in mortgage principal. At the final hearing, Husband's attorney noted that Husband "also paid interest, he paid the insurance, he paid the electric bill, all for a house he didn't live in. We're not asking that he be reimbursed for those things . . . ." Tr., Vol. II at 93-94. The trial court's decree, stating the credit is "for mortgage payments [Husband] made . . . which reduced the principal balance due," recognizes this disclaimer. Because *Bojrab* was a straight reimbursement situation, I do not believe it is directly applicable to this case in which the parties negotiated a set-off for the mortgage payments in the form of reduced child support.

[26] Wife contends that the trial court's decree essentially gives Husband a double credit because pursuant to the parties' December 2017 Agreed Provisional Order, Husband was already granted a credit for these payments in the form of reduced child support. I agree. The majority notes that the amount Husband paid "*for all obligations*" the parties agreed he would undertake while the

dissolution was pending far exceeds the amount his child support was reduced.[3] *See* slip op. at ¶ 15 (emphasis added). However, I do not believe the parties were engaged in a mathematical exercise nor did they intend mathematical precision when entering into the agreed order. The order does not contain any language anticipating a mathematical reckoning when a decree was entered. Rather, the parties recognized that Husband was making payments during the pendency of the dissolution from which he was not benefitting and intended to mitigate his financial expenditure. Taking into account the parties' agreement to the reduction of child support in consideration of the Husband's financial obligations as to the marital residence, and also considering Husband's disclaimer of the amounts he paid in addition to the mortgage principal, I believe the trial court improperly granted Husband a redundant credit. Accordingly, I would reverse the trial court's order as to the $6,000 credit.

[27] With respect to the attorney's fee issue, I concur in part and dissent in part. I agree that the tax refund should have been included in the marital pot but that its inclusion would not have significantly changed the ultimate property division. *See* slip op. at ¶ 19. I also agree that it is within the trial court's discretion to order a party to pay part or all of the other party's attorney's fees in a dissolution action and the court does not have to give reasons for its decision. *See id*. Therefore, I agree with the majority that the trial court did not

---

[3] It appears the majority relies in part on payments for which Husband did not ask to be reimbursed in globally comparing the figures.

abuse its discretion in ordering Husband to pay a smaller portion of Wife's attorney's fees than Wife has requested.[4] And finally, I agree that the trial court has discretion with respect to the allocation of assets and I therefore agree it was appropriate for the trial court to allocate the tax refund to Wife. However, I do not believe the trial court had the discretion to order Wife to use the tax refund to pay the remaining portion of her attorney's fees. Although Wife is obligated to pay those fees, once the tax refund was allocated to Wife, the use of the asset was up to her.

[28] In all other respects, I concur with the majority opinion.

---

[4] I am uncomfortable with language in the majority opinion that could be interpreted to diminish or disregard Wife's contributions to the marriage. *See, e.g.,* slip op. at ¶ 19 (stating that "Wife fails to recognize" that the tax refund "was generated almost exclusively by income she did not earn") and ¶ 21 (stating that the trial court ruled Husband should not pay more of Wife's attorney's fees because Wife "received the entirety of the tax refund comprised of money she did not earn"). People contribute to a marriage in myriad ways, not just financial, and the fact that Husband earned the bulk of the couple's income during the marriage does not mean Wife did not also contribute to the marriage in a meaningful way.