Jolene G. EYE, Appellant–Respondent,

v.

Glenn Lee EYE, Appellee–Petitioner.

No. 74A01–0509–CV–424.

Court of Appeals of Indiana.

June 23, 2006.

Michael Cheerva, Avery & Cheerva, LLP, Indianapolis, IN, Attorney for Appellant.

Timothy J. Hambidge, Olsen, White and Hambidge, LLP, Evansville, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Jolene Eye ("Wife") appeals from the trial court's distribution of marital property following the dissolution of her marriage to Glenn Eye ("Husband"). The issue raised by Wife is whether the allocation of virtually all of the marital es-

tate to Husband, due to the trial court's setting aside of gifted and inherited property to him, was contrary to Indiana law. The legislature has set forth a list of criteria that must be considered in making an unequal distribution of marital property, inheritance being only one factor. We conclude that the trial court erred by dividing the marital assets as it did without giving clear consideration to all the relevant statutory requirements. We therefore remand for a redetermination of the distribution.

Reversed and remanded.

### Facts and Procedural History

Wife and Husband were married on August 30, 1980, and have two sons from the marriage. Although living in Indiana at the time they were married, Husband was from West Virginia. In 1986, Husband inherited a one-third interest in a West Virginia property owned by his great-aunt ("Aunt's Riverton property"). This land was located adjacent to a 48–acre property owned by his grandfather ("Grandfather's Riverton property"). Aunt's Riverton property was subsequently partitioned, and Husband took ownership of a 17.04–acre tract. The deed recorded both Husband and Wife as having title.[1]

In 1988, Husband and Wife moved to Riverton, West Virginia, to care for Husband's grandparents. Husband's grandparents owned a 162–acre farm ("Harper Mill Farm") where Husband and Wife lived rent-free. Husband worked as a handyman on his grandparents' farm, and Wife worked at a local bank and raised the children. Husband performed most of the caregiving responsibilities, and spent many evenings at his grandparents' homestead

in Franklin, a 4.95–acre property ("Franklin homestead"). In July of 1992, Husband's grandmother died, leaving all her property to Husband's grandfather. Grandfather, retaining a life estate, subsequently gifted to Husband three properties: the Franklin homestead, the Harper Mill Farm, and Grandfather's Riverton property. These properties were titled solely in Husband's name, and had been in the Eye family since the 1920s. Grandfather died in October of 1992, leaving Husband with the sole interest in the three properties. Husband also inherited a $145,000 certificate of deposit ("CD") and forty shares of stock in the Pendleton County Bank. Both of these were solely in Husband's name, although Husband later added Wife's name to the account holding the CD.

In 1998, Wife and Husband returned to Indiana, where they bought property and a home ("Mariah Hill"). To finance the purchase of Mariah Hill, Husband used his inherited West Virginia properties and the proceeds from the CD as security for a mortgage. While living in Indiana, Husband and Wife rented portions of the West Virginia properties to tenants. Wife made several trips to West Virginia to clean and prepare the residences for new renters, and the income generated from rent was used for the benefit of both Husband and Wife.

Husband filed for dissolution of marriage on March 5, 2004. At the time of dissolution, the Aunt's Riverton property was valued at $17,000. The Franklin homestead was sold prior to the dissolution proceedings for $110,000, of which $40,000 was used to pay down an existing mortgage owed on other West Virginia proper-

---

1. Husband claims the attorney who drafted the deed included Wife's name without his knowledge, and did the same for his married cousin who also had a one-third interest in

the property. Appendix to Brief of Appellant at 37. Wife admitted during cross-examination that she was surprised that her name was included on the title. *Id.* at 131.

ty and $70,000 was used for joint marital expenses such as other mortgage payments or credit card bills. Husband unsuccessfully attempted to sell the Harper Mill Farm for $700,000 in the year prior to the separation from Wife, and currently retains ownership of it. There is a mortgage on the Harper Mill Farm, of which approximately $76,410 remained outstanding at the time of dissolution. Grandfather's Riverton property was valued at $48,000. In addition, Husband received $745.00 per month in rent from the remaining West Virginia properties. The full amount of the CD was used during the marriage for various purposes benefiting both Husband and Wife, including payment of bills and the construction of a garage on the Harper Mill Farm valued at $33,000. Following a bank acquisition, the Pendleton County Bank stock became 2,400 shares of Allegheny Bank stock, valued at $112,800 at the time of dissolution.

A final hearing was held April 6, 2005, after which the trial court issued findings and conclusions. In pertinent part, the trial court found:

> 13. The 2900[sic] shares of Allegheny Bank Shares is a marital asset. However, it was inherited by the husband, was never commingled with other assets and shall be set off to him.

> 14. All of the acreage in West Virginia, however titled, is a marital asset. However, it was inherited by the husband, was never commingled and shall be set off to the husband. The exception is a certain improvement, a garage, with a marital value of $33,000.

> The husband shall be the owner of this garage.

> * * *

> 23. With regard to the Indiana personal property and household goods, each party shall have set off to them any inherited property or gifted property.

App. to Br. of Appellant at 6. Based on these findings, Husband was allocated all the shares of bank stock, the Aunt's Riverton property, the Grandfather's Riverton property, the Harper Mill Farm, and $22,014 in personal property and household goods. Wife received $14,437 from the personal property and household goods.

The value of all inherited and gifted property set off from the total marital estate for Husband and Wife was $820,858,[2] of which Husband received the vast majority. The remaining marital pot, $236,002, was split almost evenly, with $118,006 going to Husband and $117,996 to Wife. However, taking into account the amounts set off to each party, the percentage of the total marital pot given to Husband was approximately 87.5%, while Wife received approximately 12.5%.[3] The Decree of Dissolution issued June 16, 2005, incorporated the trial court's findings and conclusions. Wife subsequently appealed the trial court's distribution of the marital estate.

### Discussion and Decision

The parties do not dispute the facts or the trial court's valuation of the marital property. Rather, Wife disputes the trial court's distribution of the inherited or gift-

---

2. This figure includes the value of the Indiana personal property set off to Husband and Wife, the 2,400 shares of bank stock, the Aunt's Riverton property, Grandfather's Riverton property, and the figure used as a sale price for the Harper Mill Farm less the outstanding mortgage debt on that property.

3. The total marital estate was $1,056,860, of which $924,427 went to Husband and $132,433 went to wife.

ed property, which resulted in an uneven distribution of the total marital estate.

## I. Standard of Review

The disposition of marital assets is an exercise of the trial court's sound discretion. *Hatten v. Hatten,* 825 N.E.2d 791, 794 (Ind.Ct.App.2005), *trans. denied.* We review a claim that the trial court improperly divided marital property for an abuse of discretion. *Id.* In doing so, we consider the evidence most favorable to the trial court's disposition of the property, without reweighing the evidence or assessing the credibility of witnesses. *Id.* Although a different conclusion might be reached in light of the facts and circumstances, we will not substitute our judgment for that of the trial court. Id. At Husband's request, the trial court issued findings of fact and conclusions of law. We review a trial court's findings to determine if they are clearly erroneous, but review its conclusions *de novo,* even where the trial court labels them as findings. *Fobar v. Vonderahe,* 771 N.E.2d 57, 59 (Ind.2002). "An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law or disregards evidence of factors listed in the controlling statute." *Hatten,* 825 N.E.2d at 794.

## II. Unequal Division of Marital Property

Accompanying a dissolution of marriage, the trial court must divide marital property in a just and reasonable manner, including property owned by either spouse prior to the marriage, acquired by either spouse after the marriage and prior to final separation of the parties, or acquired by their joint efforts. Ind.Code § 31–15–7–4. The trial court's disposition of the marital estate is to be considered as a whole, not item by item. *Fobar,* 771

N.E.2d at 59. An equal division of marital property is presumed to be just and reasonable. Ind.Code § 31–15–7–5. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence of the following factors:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

(A) before the marriage; or through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

*Id.* Importantly, "when ordering an unequal division, the trial court must consider *all* of the factors set out in [the statute]." *Wallace v. Wallace,* 714 N.E.2d 774, 780 (Ind.Ct.App.1999), *trans. denied,* (emphasis in original); *accord Fobar,* 771 N.E.2d at 59. We begin with the strong presumption that the trial court considered and complied with the applicable statute, which must be overcome by a party challenging the trial court's division of marital property. *Hatten,* 825 N.E.2d at 794.

Here, the trial court explicitly included all gifted or inherited property in the total marital estate, but set it off to the respective parties. This resulted in a disparity

between the amounts distributed from the total marital estate to Husband and Wife that significantly favored Husband. Wife contends that the trial court erred with respect to the gifted and inherited property when it deviated from the statutory presumption of an equal division without addressing each factor enumerated in Indiana Code section 31–15–7–5. Husband responds that the presumption was adequately rebutted because the statute's intent is that "inherited property could be used to overcome the presumption of equal division of marital property." Brief of Appellee–Petitioner at 11.

The statute is clear that whether property is acquired by a spouse through inheritance or gift is one factor that must be considered in a trial court's determination that an unequal distribution would be just and reasonable. Husband goes too far in claiming that it may be the sole factor. It must be considered in conjunction with relevant evidence regarding other statutorily prescribed factors, and with any evidence demonstrating additional reasons that an unequal distribution would be just and reasonable. Wife goes too far in her claim that the trial court must explicitly address each of the considerations included in Indiana Code section 31–15–7–5.

In *Trost–Steffen v. Steffen*, 772 N.E.2d 500, 505 (Ind.Ct.App.2002), *trans. denied,*

the wife appealed the division of the marital estate in part because she received only 24% of the jointly acquired property, despite making financial and non-financial contributions toward the acquisition of such property. She therefore requested an equal portion of the jointly acquired property. Id. We affirmed the trial court's distribution, observing that it properly considered the factors of Indiana Code section 31–15–7–5, "expressly finding that [the wife's] financial status (economic circumstances) was 'far superior' to [the husband's] financial status, that [the husband] was the 'main contributor' to the building of the farm business, and that both parties are well educated, from which we can infer that both parties have earning capacity." Id. at 507. As such, the trial court arrived at a just and equitable, although unequal, division of the jointly acquired property.

By comparison, in *Bloodgood v. Bloodgood*, 679 N.E.2d 953, 958 (Ind.Ct.App. 1997), we affirmed the trial court's equal division of marital assets, including gifted and inherited property. The trial court weighed factors required to rebut the presumption of an equal division, found them in equipoise, and determined that an equal distribution was just and reasonable because the presumption had not been rebutted.[4] *Id.* at 957. Specifically, the trial

---

**4.** The analysis in *Bloodgood* involved Indiana Code section 31–1–11.5–11(c), the precursor to Indiana Code section 31–15–7–5. The language of the previous provision is substantially similar to the current provision, requiring a court to consider relevant evidence, including:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the

property is to become effective, including the desirability of awarding the family residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties.

*Bloodgood,* 679 N.E.2d at 956.

court's findings indicated its consideration of the wife's poor economic circumstances and limited earning capacity against the existence of the gift and inheritance and the husband's superior earning capacity. *Id.* The trial court also weighed the length of the marriage, the age of the parties, and the parties' fiscal behavior during the marriage against the facts in favor of an unequal division of marital property. *Id.* We affirmed the trial court's distribution based on its assessment of the required factors.

In the present case, unlike *Trost–Steffen* and *Bloodgood,* the trial court did not issue findings addressing the other factors included in Indiana Code section 31–15–7–5, specifically the contribution of the parties, the conduct of the parties, and the relative earning ability of each party. Although we acknowledge that "[t]he trial court's exclusion of these factors from its written findings does not mean that it did not consider them," *Shumaker v. Shumaker,* 559 N.E.2d 315, 318 (Ind.Ct.App.1990), we are unable to infer from the findings that the trial court did so.

The facts of record and the valuation of the property at issue are not in dispute. There is sufficient evidence to support the trial court's findings that Husband inherited the shares of bank stock and the West Virginia properties, and that the parties inherited certain items of the Indiana personal property and household goods. Evidence also supports the trial court's determinations that some of Husband's inherited property was never commingled. For instance, the bank shares were kept separate and distinct, remaining in Husband's name only.

Yet, because of the nature of real property, as opposed to property like the bank shares, a deeper enquiry is necessary. Whether or not property was commingled is not an included component of the statutory analysis required to rebut the presumption of an equal distribution of marital assets, although relevant evidence might also indicate whether property was kept separate and distinct, or whether a type of *de facto* commingling occurred. In *Fobar,* 771 N.E.2d at 59, our supreme court discussed the holding in *Castaneda v. Castaneda,* 615 N.E.2d 467 (Ind.Ct.App. 1993), which indicated that a trial court may deviate from the presumption of an equal distribution where property was brought separately into the marriage, was never commingled with other marital assets, and was never treated as a marital asset. The supreme court explained that this holding "permits the trial court, in its discretion, to choose to distribute the marital property unequally in favor of one spouse based on statutorily identified considerations, one of which is inherited property. Whether to do so is a matter of trial court discretion in light of all other relevant factors." *Id.* For this reason, the trial court in the present case should have considered the other factors included in Indiana Code section 31–15–7–5.

Besides the fact that certain marital assets had been inherited by or gifted to the parties, the trial court also made a determination of the parties' earnings when it outlined for support purposes their weekly gross incomes. Although not in direct relation to property division or the determination of property rights, this at least shows that the trial court contemplated the earning abilities of the parties. However, the trial court made no further findings or conclusions addressing the economic circumstances of the parties at the time of dissolution. Moreover, the trial court did not address relevant evidence concerning the acquisition of the inherited or gifted property, or the conduct of the parties regarding the disposition of the property.

Relevant evidence establishing any contribution by Wife—regardless of whether

it was income producing—to the acquisition of the inherited or gifted property may influence the degree of any disparity in the property distribution. *See Hatten,* 825 N.E.2d at 796 (allocating a portion of joint investment account to wife because, although she made no separate financial contribution to the account, she used a portion of her own inheritance for household expenses and the purchase of a car for husband, which in part protected the funds in the account from being used for those purposes). Likewise, relevant evidence regarding Wife's conduct during the marriage with respect to the property might also affect the property distribution.

Here, relevant evidence bearing upon these factors existed. Testimony by Husband established that Grandfather changed his will, leaving the property to Husband, because "we [Husband and Wife] were there looking after them." App. to Br. of Appellant at 102. Other testimony explained that Husband's grandparents "saved ... a lot of money that they would have otherwise spent going to a nursing home...." *Id.* at 153. Wife contends that her efforts to help care for Husband's grandparents in part protected the assets later gifted to and inherited by Husband from being liquidated and spent on professional nursing care. Additional testimony revealed that Wife made trips from Indiana to the West Virginia properties to check on them, and to clean, paint and repair them, in order to "get things ready" for new renters. *Id.* at 149. She also managed the family finances, including a joint account into which revenue from the rental properties was deposited. *Id.* at 60–61. This and other relevant evidence of record must be weighed by the trial court in light of the prescribed factors before a proper determination can be made that an unequal distribution is just and reasonable.

As was the case in *Wallace,* the trial court's distribution of the marital estate in this case hinged largely on the fact of Husband's inheritance. 714 N.E.2d at 780. There, the trial court divided the marital assets unevenly, allocating 86% to the husband and 14% to the wife. Id. This distribution was "attributable to the trial court's determination that certain items from the marital estate should be set off fully to [the husband] because they had been acquired by him through gifts or inheritance." *Id.* The trial court's rationale was that the husband rebutted the presumption of an equal division by demonstrating:

(1) the gifts from [husband's] parents were to [husband] only; (2) the assets inherited by [husband] have at all times been held separately by [husband] and in his name only; (3) [wife] made no contribution to the accumulation or increase in the value of the gifted and inherited assets; (4) the gifted and inherited assets were never commingled with joint marital assets; (5) [wife] did not exercise control over, nor have any input with regard to, the gifted or inherited assets; and (6) [husband] did not at any time treat the gifted and inherited assets as marital property.

*Id.* at 779–80. We cautioned that a consideration of "whether the property was acquired by one of the parties through inheritance or gift is only one of the five factors a court should review," and that "[b]y focusing only upon one factor when others are present, a trial court runs the risk of dividing a marital estate in an unreasonable manner." *Id.* at 780.

We acknowledge the bone of contention in *Wallace* regarding whether the trial court included or excluded the husband's inherited property from the total marital estate, which is not currently an issue. See id. at 782 (Bailey, J., dissenting) ("Quite simply, the trial court did not ex-

clude property from the marital pot."); *see also Trost–Steffen,* 772 N.E.2d at 507 ("We respectfully disagree with the *Wallace* majority that the trial court improperly excluded the gifts and inheritances from the marital estate."). Regardless, a large amount of inherited property was set aside for the husband, resulting in an unequal distribution between him and the wife. Although Judge Bailey was satisfied that the trial court had taken other relevant statutory factors into consideration, the majority was not convinced the trial court had met the requirements for determining that an uneven allocation of marital assets was just and reasonable. We note that Judge Bailey relied on the trial court's explicit findings that

> Husband, as shown by the evidence, had and will continue to have a greater earning ability than Wife. The marital residence, because of the Corporate involvement, could not be awarded to Wife. Since Wife has custody of the minor children, Wife and the minor children will need to establish a new family residence. Wife, who has no work experience other than homemaker and has no college education, will need time to establish herself in the job market and maintain her responsibility for being the mother and custodian of the children. Therefore, the Court took these items into consideration in determining. the division of the marital estate.

*Wallace,* 714 N.E.2d at 782. There is no analogous language in the findings and conclusions of the case before us.

Instead, although the trial court included the inherited property in the total marital estate, its act of setting this property aside for Husband based on the fact of its inheritance affected an unequal distribution of the marital estate absent consideration of other factors necessary for the conclusion that such a distribution would be just and reasonable. Thus, the presumption that the trial court complied with the applicable law in dividing the assets has been rebutted. The trial court abused its discretion.

As in *Wallace,* the trial court's intent in setting aside the inherited and gifted property as it did seems to have been to "preserve the familial integrity of those assets," especially the West Virginia properties. Id. at 781. This is understandable in light of the aunt's desire that the property she bequeathed to Husband remain in the Eye family, and in light of that family's history on the land dating back to the 1920s. Yet, we cannot condone the trial court's distribution absent consideration of other statutorily prescribed factors.

As we noted in *Bloodgood,* although Indiana case law approves, without mandating, the setting aside of inherited property in favor of the respective spouse, "[t]he key factor is whether the trial court correctly exercised its discretion" when deciding whether an equal division is just and reasonable. 679 N.E.2d at 958. Indeed,

> [i]n crafting a just and reasonable property distribution, a trial court is required to balance a number of different considerations in arriving at an ultimate disposition. The court may allocate some items of property or debt to one spouse because of its disposition of other items. Similarly, the factors identified by the statute as permitting an unequal division in favor of one party or the other may cut in different directions.

*Fobar,* 771 N.E.2d at 60.

This is not to say that an even distribution is required in the present case. We will not impose upon the discretion properly exercised by the trial court in dividing the marital estate. Consideration of relevant evidence under Indiana Code section 31–15–7–5 may or may not establish that the present situation merits an uneven dis-

tribution as just and reasonable. For this reason, we remand to the trial court with instructions to determine the distribution of the marital estate in accordance with statutory requirements.

*Conclusion*

By setting aside for Husband the majority of the inherited or gifted property, the trial court divided the total marital estate in an unequal manner without consideration of all the factors required to rebut the presumption that an equal distribution is just and reasonable. As a result, it abused its discretion, and we remand for a redetermination of the distribution of the marital property in line with Indiana Code section 31–15–7–5.

Reversed and remanded.

VAIDIK, J., and MATHIAS, J., concur.