**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 25 2012, 8:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEY FOR APPELLEE:

**KATHERINE A. HARMON**
Mallor Grodner, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| IN RE: THE MARRIAGE OF JOHN DAVIS, | ) | |
|    Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No.  15A05-1112-DR-649 |
| | ) | |
| PAMELA DAVIS, | ) | |
| | ) | |
|    Appellee-Petitioner. | ) | |

APPEAL FROM THE DEARBORN CIRCUIT COURT
The Honorable James D. Humphrey, Judge
Cause No. 15C01-0907-DR-118

**July 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

John Davis (Husband) appeals the trial court's distribution of property in the dissolution of his marriage to Pamela Davis (Wife). We affirm.

**Issue**

The sole issue for our review is whether the trial court abused its discretion by deviating from an equal distribution.

**Facts and Procedural History**

Husband and Wife were married in 1977. They lived and worked in California for several years before relocating to Sharonville, Ohio. They eventually purchased a farm in Dearborn County to be closer to Wife's elderly parents. Husband owns two corporations and earns approximately $100,000 per year. The parties' son is Husband's sole employee. Husband also purchases and renovates homes and businesses. Wife worked at United Healthcare from 1998 to 2004, where she was Director of the National Appeals Service Center. When her department was relocated, Wife chose not to accept a promotion and move to Florida or Minnesota. Instead, she obtained a Master's Degree and is currently an assistant professor in the College of Health Professions at Northern Kentucky University where she earns $57,000 per year.

Before and during the course of the parties' marriage, Wife's father worked at Procter and Gamble (P&G). Before the parties' marriage, Wife's father gifted his daughter 710 shares of P&G stock. During the course of the parties' marriage, Wife's father gifted Wife stock on five occasions. He also gifted Husband shares of stock one time in 1999. Neither

party made any deposits into nor withdrawals out of his or her P&G stock account. All of the funds in the two accounts were from the stock and its dividend reinvestments and splits. In 2005, the parties placed their assets into trusts. The purpose of the trusts was to hold title to the property for the grantor during his or her lifetime and to provide for the orderly transfer of assets upon the grantor's death. The P&G stocks were placed into each party's trust and were not commingled. At the time of the dissolution, Wife's P&G shares were valued at $300,000, and Husband's shares were valued at $60,000.

In July 2009, Wife filed a petition for dissolution. At the hearing on the petition, Wife asked the trial court to set off the P&G stock to her because it was a gift from her father that had not been commingled with joint property. Husband, however, pointed out that he had increased the tax withholdings in his personal earnings so that the parties had enough funds to cover the taxes on the stock.

Wife also complained about several questionable financial transactions that occurred both during the marriage and after she filed the dissolution petition. For example, in October 2007, Husband began transferring money in increments of less than $10,000 from one of his businesses to the other. He transferred a total of $676,000. Certified Public Accountant Jonathan Libbert testified that it was very unusual to transfer money from one corporation to another in such a manner. Husband also used business funds to pay for $62,000 in personal expenses over a two-year period. Also during the marriage, Husband alleges that he spent $200,000 making improvements to a building that cost $90,000 in 2007 and was appraised for $134,000 in 2009.

3

In August 2009, during the pendency of the dissolution, the trial court entered an order restraining Husband from transferring, encumbering, concealing, selling, or otherwise disposing of any joint property without the consent of both Wife and the court. Husband nevertheless cashed in a Certificate of Deposit and took money out of a Schwab account to purchase two properties, one for $51,570 and another for $135,000. Husband did not advise wife or her counsel of these purchases.

On November 14, 2011, the trial court issued an eleven-page order dissolving the parties' marriage and distributing the parties' property. The order provides in relevant part as follows:

11. The Court finds that an unequal division of property in favor of wife is appropriate under the facts and circumstances of this case. In considering the unequal division, the Court also considers the gifting of stock to the parties as individual and or joint gifts. In making this decision, the Court also considers unequal earning potential of the parties.

12. [Husband's] place of business . . . was purchased April 16, 2007, for $90,000 and it appraised for $134,000 on December 15, 2009. [Husband] testified that he paid Steve Neal over $200,000 in 2007 and 2008 to renovate the property.

13. [Husband] purchased . . . property . . . on June 11, 2010, for a purchase price of $135,000. [Husband] testified he purchased the property with marital assets in violation of the Provisional Order dated August 14, 2009, and never supplemented his discovery answers, sought Court approval or notified Petitioner of this purchase until the (second) Final Hearing on May 9, 2011.

14. [Husband] purchased . . . property . . . on July 15, 2010, for a purchase price of $51,670. [Husband] testified that his unauthorized purchase of real estate with marital assets were investments in what he hoped would be income producing properties. The purchase was in violation of the August 14, 2009, Provisional Order and [Husband] did not supplement

4

his discovery answer, seek Court approval or notify [Wife] of the purchase until the (second) Final Hearing on May 9, 2011.

\* \* \* \* \*

17. The presumption of equal division is further rebutted by a showing that there is a disparity in the economic circumstances of the spouses at the time the property is to be distributed. The Court must also consider the disparity in the earnings and future earning abilities of the spouses. I.C. 31-15-7-5.

18. Petitioner changed careers in 2005 rather than take a job promotion that required relocation to Minnesota. Her new position, Assistant Professor of Nursing at Northern Kentucky University, does not compensate at the same rate. Respondent had been permitted to grow his businesses and acquire new properties which enabled him to increase his income. In fact, Wife gave up an opportunity to move and maintain her higher paying employment with United Health Care. . . .

\* \* \* \* \*

20. In determining Final Distribution, the Court considered the source and manner of the gifts of the Procter[o]r & Gamble shares to both parties, the Respondent's disposition of funds during the marriage and after the Provisional Orders, Petitioner's lower earning capacity and Petitioner's interruption of her employment during the course of marriage. Simpson v. Simpson, 650 N.E.2d 333 (Ind. Ct. App. 1995).

\* \* \* \* \*

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT:

\* \* \* \* \*

2. The Court, after considering the factors set forth in I.C. 31-15-7-5 concludes that [Wife] has rebutted the presumption of an equal division.

3. The Court find, given all the circumstances, including the source and timing of these gifts and unequal earning capacity of the parties, that each party shall retain the shares of Procter & Gamble Stock in their

respective names.

4.      The assets of the marriage shall be divided pursuant to the finding of the Court attached and marked as Exhibit "A" and the parties are required to sign any documents required to effectuate the transfer of any/all assets within 60 days of this Order.

Appellant's App. at 28, 30-31. Exhibit A lists the total marital assets as $3,453,576.40 and distributes $1,794,931.85, or 55% of the assets, to Wife and $1,495,959.039, or 45% of the assets to Husband. Husband appeals.

**Discussion and Decision**

Husband's sole argument is that the trial court erred in distributing the parties' property. Specifically, he complains that the trial court "abused its discretion in depriving him of his fair share of the marital assets." Appellant's Br. p. 8.

The disposition of marital assets is within the trial court's sound discretion. Eye v. Eye, 849 N.E.2d 698, 701 (Ind. Ct. App. 2006). We review a claim that a trial court improperly divided marital property for an abuse of discretion. Id. In doing so, we consider the evidence most favorable to the trial court's disposition of the property, without reweighing the evidence or assessing the credibility of the witnesses. Id. Although a different conclusion might be reached in light of the facts and circumstances, we will not substitute our judgment for that of the trial court. Id. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Id.

The trial court must divide marital property in a just and reasonable manner, including property owned by either spouse prior to the marriage, acquired by either spouse after the

6

marriage and prior to final separation of the parties, or acquired by their joint efforts. Ind. Code § 31-15-7-4. An equal distribution of marital property is assumed to be just and reasonable. Ind. Code § 31-15-7-5. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence of the following factors:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
> (A)    before the marriage; or
> (B)    through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
>
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
>
> (5) The earnings or earning ability of the parties as related to:
> (A) a final division of property; and
> (B) a final determination of the property rights of the parties.

Ind. Code § 31-15-7-5.

Here, the trial court explicitly took into consideration the source and manner of the P&G stock gifts. The trial court also considered the disparity in the parties' incomes and earning potential. Additionally, the trial court found that Wife gave up her opportunity to move and maintain her higher paying position with United Health Care. Lastly, the trial court found that Husband spent $290,000 on a building in 2007 and 2008 that was appraised for $134,000 in 2009 and that he purchased two parcels of property in violation of a

7

discovery order during the pendency of the dissolution.   These were all factors properly considered by the trial court in making its division of property.  This evidence supports an unequal distribution of the parties' property, and the trial court did not abuse its discretion in awarding Wife 55% of the marital estate and Husband 45% of the marital estate.  See Macher v. Macher, 746 N.E.2d 120, 126 (Ind. Ct. App. 2001) (concluding that trial court did not abuse its discretion in awarding wife 60% of the marital estate and husband 40% of the marital estate where trial court considered only one of the statutory factors).

**Conclusion**

The trial court did not err in distributing the parties' property.

Affirmed.

ROBB, C.J., and MATHIAS, J., concur.