**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 11 2012, 9:08 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**REBECCA L. LOCKARD**
Jeffersonville, Indiana

ATTORNEY FOR APPELLEE:

**DAWN R. ELSTON**
Jeffersonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RICHARD A. WALLS, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 10A01-1112-DR-572 |
| | ) | |
| JANET WALLS, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE CLARK SUPERIOR COURT
The Honorable Vicki L. Carmichael, Judge
Cause No. 10C01-1011-DR-524

**December 11, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

The parties in this dissolution proceeding had been married for nearly twenty years. Although they purchased a parcel of land during the course of the marriage, they owned approximately seventy acres of real estate that had been gifted to Husband. The marital residence was on one of those parcels that consisted of nearly six acres. All of the land is held solely in Husband's name and he is responsible for paying the property taxes.

Husband owned an excavation business, but he did not know the extent of his income for several years. Husband also sold some of the marital property, kept the proceeds for himself, did not pay any of the household expenses, and took several trips to Florida. Wife was employed on a full-time basis during the marriage and contributed to the maintenance and upkeep of the residence. She also helped with the construction of the marital residence and fencing on the property. Wife also paid the household bills, insurance, and some of the mortgage payments on the residence and on a business line of credit.

The trial court properly determined that the real property was commingled with the marital estate, notwithstanding the fact that Husband received the property as a gift from his grandmother. We also affirm the trial court's decision to award Wife a one-half interest in the real property and decline to disturb the distribution of the marital property.

FACTS

Richard and Janet Walls (collectively, the Wallses) married in April 1991 and separated in November 2010. Prior to the marriage, Janet moved into Richard's mobile

2

home in 1989 that was located on approximately 7.5 acres in Otisco. Richard had been deeded this property by his grandmother, Norine Walls, in July 1982.

The Walls Farm is comprised of four parcels, totaling nearly 68 acres, which lists Richard as the sole owner. Norine had deeded all of the property to Richard six months before he married Janet. Janet and Richard built a home on a six-acre parcel of the Walls Farm, which they financed by taking out a mortgage in both of their names. In April 2000, Rick and Janet purchased 4.65 acres from another individual, which had been a part of the original farm, but had not been included in the original Walls Farm deed.

Janet testified that she helped improve the value of the Walls Farm by assisting Richard with building their new house, sheds, ponds, and fencing on the property. Janet also planted, mowed nearly five acres of lawn, and worked jobs outside the home to bring money into the household. Janet also helped Norine by taking her to doctor's appointments, cooking her food, taking her to the grocery, caring for her yard, and doing other things to help Norine remain comfortable.

Throughout the marriage, Richard earned money primarily from his excavation business, digging foundations, basements, and constructing driveways. Richard claimed that he did not know what his income was in 2010 or 2011.

Janet earns $11.50 per hour as an employee of Surgical Associates in Jeffersonville, and her take home pay averages $700 every two weeks. Until May 2011, Janet paid Richard's health insurance premiums in the amount of $200 per month. She

3

also paid health insurance for the parties' two sons,[1] which amounted to $280 per month. Janet also paid all of the utility and cell phone bills.

During the marriage, Richard sold some of the personal property on Craigslist that he and Janet had acquired and kept most of the proceeds for himself. At some point, the trial court entered a joint preliminary restraining order preventing the parties from selling the property. However, Richard continued selling various items of property. Richard did not pay any of the household expenses, and he ignored the taxes that were owed on his business. Richard also took several ten-day trips to Florida and to casinos.

The Wallses currently owe more than $100,000 to CitiMortgage and are facing foreclosure on their residence. The evidence showed that as of September 30, 2011, more than $12,000 was required to make the mortgage current. The parties also owed $67,970.47 on a second loan with New Washington State Bank.

The Walls Farm was appraised in February 2011. The residence and the land were valued at $200,000. The remaining sixty-plus acres were appraised at $230,000. The parties agreed that an auction was the best method to pay off the marital debt and divide the property. If Richard did not agree to an auction, it was decided that he would be

---

[1] Derrick, one of the parties' sons, is twenty years old and no longer lives with his parents. He is employed on a full-time basis and earns about $9.00 per hour. Ryan, the other son, is nineteen years old and is enrolled in "E-school," which means that he studies from his residence. Ryan also works full-time and earns approximately $9.00 per hour. The parties do not challenge the trial court's finding that both Ryan and Derrick are emancipated and that no child support is owed.

4

responsible for making the monthly mortgage payment of $1,284.61, and the monthly line of credit payment beginning on March 1, 2011.

On October 3, 2011, the marital home and the acreage on which it was located were sold at a tax sale. Although the property was assessed at $245,000 at the time, it was sold to a Florida corporation for $46,000. The past due tax amount was $4,456.38. It was also established that the Wallses owed approximately $11,920 to other creditors.

After a final hearing, the trial court entered a decree of dissolution and issued findings of fact and conclusions of law on November 4, 2011. The trial court determined, among other things, that Janet was entitled to one-half of the equity in the Walls Farm totaling $131,000. The trial court also decided that the remainder of the real property should be sold at auction and upon payment of the fees and debts associated with the property, the net equity should be split equally between Janet and Richard.

The trial court awarded Richard the farm equipment, tools, and his truck, all of which was valued at $60,232.50. Janet also received approximately $7950 of the personal property. In the end, the trial court awarded eighty-eight percent of the personal property to Richard, and divided the real property equally between Richard and Janet. More particularly, the trial court determined that "Janet Walls has persuaded the Court that an equal division of the marital estate is proper. Despite the inheritance received by Richard Walls, the property has been commingled over the term of the marriage such that the Court does not find any part should be "set-off" to Richard." Findings of Fact and

5

Conclusions of Law p. 13-14.[2]  The trial court also ordered the joint debt to be divided equally between the parties, and it directed that Janet and Richard were responsible for their individual debts.

Richard now appeals.

## I. Commingling of Property

Richard first claims that the trial court erred in determining that the real property had been "commingled." Appellant's Br. p. 1. Richard contends that this determination was erroneous because the property has never been in Janet's name and it has always remained in the Walls family. As a result, Richard argues that the trial court should have set off all of the real estate to him.

We initially observe that Indiana Code section 31-15-7-4 provides in part:

In an action for dissolution of marriage, . . . the court shall divide the property of the parties, whether:

(1) owned by either spouse before the marriage;

(2) acquired by either spouse in his or her own right:

    (A) after the marriage; and

    (B) before final separation of the parties; or

(3) acquired by their joint efforts.

Inherited or gifted property is not to be excluded from the marital assets. Wallace v. Wallace, 714 N.E.2d 774, 780-81 (Ind. Ct. App. 1999). Additionally, under Indiana

---

[2] These findings are set forth in a separate document that was not included in the parties' appendices.

Code section 31-15-7-5, the trial court presumes that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence of various factors, including:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
> > (A) before the marriage; or
> >
> > (B) through inheritance or gift.
>
> . . .
>
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property. . . .
>
> (5) The earnings or earning ability of the parties as related to:
>
> > (a) a final division of property; and
> >
> > (b) a final determination of the property rights of the parties.

I.C. § 31-15-7-5.

When examining the above, we acknowledge that an issue of "commingling" is not part of the statutory analysis required to rebut the presumption of an equal distribution of the marital assets. However, as we acknowledged in Eye v. Eye, 849 N.E.2d 698, 703 (Ind. Ct. App. 2006):

> Whether or not property was commingled is not an included component of the statutory analysis required to rebut the presumption of an equal distribution of marital assets, although relevant evidence

7

might also indicate whether property was kept separate and distinct, or whether a type of de facto commingling occurred.

Id. at 703.

Also, as Indiana Code section 31-15-7-5 makes clear, the trial court is to consider all of the marital property when dividing it. All of the statutory factors must be considered, and a claim by one spouse that an inheritance or gift should be the only factor examined by the trial court "goes too far." Eye, 849 N.E.2d at 702. Relevant evidence that establishes contribution by the spouse, regardless of whether it was income producing, to the acquisition of the inherited or gifted property may influence the degree of any disparity in the property distribution. Id. at 703-04. Similarly, relevant evidence regarding a spouse's conduct during the marriage with respect to the property might also affect property distribution. Id.

In this case, even though the property may not have been in Janet's name and has remained in the Walls family, Janet lived in the marital residence on the property. Her name was also on the mortgage. Even more compelling, the evidence established that Janet contributed heavily toward making improvements on the property.

In our view, it is apparent that the trial court examined and considered the various statutory factors set forth in Indiana Code section 31-15-7-5 and weighed the evidence in determining that the real property had been commingled over the course of the marriage. As a result, Richard's contention that the trial court erred in determining that the real property had been commingled fails. I.C. § 31-15-7-4; see also Eye, 849 N.E.2d at 701

8

(holding that the trial court's distribution of a majority of marital assets to the husband based <u>solely</u> on the fact that the assets were acquired by means of inheritance or gift was an abuse of discretion).

## II. Property Division

In a related issue, Richard claims that the trial court erred in dividing the marital property because he successfully rebutted the presumption of an equal distribution of the marital property. Richard maintains that he should have been awarded all of the real property, thus commanding an unequal division of the marital estate.

The disposition of marital assets is an exercise of the trial court's sound discretion. <u>Leever v. Leever</u>, 919 N.E.2d 118, 124 (Ind. Ct. App. 2009). We review a claim that the trial court improperly divided marital property for an abuse of discretion. <u>Hatten v. Hatten</u>, 825 N.E.2d 791, 794 (Ind. Ct. App. 2005). In doing so, we consider the evidence most favorable to the trial court's disposition of the property, without reweighing the evidence or assessing the credibility of witnesses. <u>Id.</u> Although a different conclusion might be reached in light of the facts and circumstances, we will not substitute our judgment for that of the trial court. <u>Id.</u>

As discussed above, Indiana Code section 31-15-7-4 compels the trial court to divide marital property in a just and reasonable manner, including property owned by either spouse prior to the marriage, acquired by either spouse after the marriage and prior to final separation of the parties, or acquired by their joint efforts. The trial court's disposition of the marital estate is to be considered as a whole, not item by item. <u>Fobar</u>

9

v. Vonderahe, 771 N.E.2d 57, 59 (Ind. 2002). In crafting a just and reasonable distribution of the property, the trial court must balance all of the statutory considerations in arriving at an ultimate disposition. Eye, 849 N.E.2d at 701.

One of the factors that a trial court may consider in dividing the marital assets is the dissipation of the marital assets by one of the parties. I.C. § 31-15-7-5(4). Dissipation of the assets generally involves the use or diminution of the marital estate for a purpose unrelated to the marriage and does not include the use of marital property to meet routine financial obligations. Hardebeck v. Hardebeck, 917 N.E.2d 694, 700 (Ind. Ct. App. 2009). Dissipation of marital assets may also include the frivolous and unjustified spending of marital assets. Id.

In determining whether marital assets have been dissipated, the trial court should weigh the following factors: (1) whether the expenditure benefited or was made for a purpose entirely unrelated to the marriage; (2) the timing of the transaction; (3) whether the expenditure was excessive or de minimis; and (4) whether the dissipating party intended to hide, deplete, or divert the marital asset. Id. The trial court may consider evidence of either pre- or post-separation dissipation. Id.

Here, ample evidence was presented at the final hearing justifying the trial court's decision to equally divide the real property. More specifically, while Richard was self-employed, he could not account for his income for at least two years and did not pay any of the household expenses. Tr. p. 251. While Richard testified that he has received thousands of dollars since he and Janet have separated, he has made only two interest

10

payments on his business line of credit and has made no mortgage payments. Put another way, Richard did not attempt to prevent a foreclosure on the marital residence. The evidence also showed that Richard sold some of the marital property even though a joint preliminary restraining order was in effect, and he could not account for the proceeds that he received from the sale of those assets. Id. at 130, 249, 251-53.

Richard also admitted that he had traveled to Florida on three occasions and had been to a gambling casino, even though he allegedly had no money. Id. at 202-03, 205. Although Richard identified the property that he had sold following an appraisal, he did not use any of those proceeds to prevent foreclosure. Id. at 182, 191, 196-97.

Janet also had made mortgage payments on the residence, and she remained employed throughout the marriage. Tr. p. 257-60. Janet also helped build the residence from a mobile home and a pole barn to a large bathroom residence house with a shop, outbuildings, manmade ponds, fencing, a pool and landscaping. Id. at 213, 216-18, 261-62. Janet paid the household expenses and assisted Norine with paying her bills and taking her to various appointments. Id. at 85, 87, 113, 259.

Based on the evidence presented, we cannot say that the trial court abused its discretion in determining that Janet should receive an equal division of the equity in the real property. It is apparent that the trial court heard the evidence and considered all of the statutory factors in reaching this conclusion. Therefore, the trial court arrived at a just and equitable—although unequal—division of the marital assets, and we decline to disturb that award.

The judgment of the trial court is affirmed.

RILEY, J., and BARNES, J., concur.