## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 26 2017, 7:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
| --- | --- |
| Mark A. Bates | Shana D. Levinson |
| Schererville, Indiana | Levinson & Levinson |
| | Merrillville, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Rebecca Stormer, | September 26, 2017 |
| *Appellant-Respondent,* | Court of Appeals Case No. 45A05-1701-DR-114 |
| *v.* | Appeal from the Lake Circuit Court |
| | The Hon. Thomas W. Webber, Sr., Judge |
| David Zander, | The Hon. Michael A. Sarafin, Magistrate |
| *Appellee-Petitioner.* | Trial Court Cause No. 45C01-1206-DR-485 |

**Bradford, Judge.**

# Case Summary

Appellant-Respondent Rebecca Stormer ("Wife") and Appellee-Petitioner David Zander ("Husband") were married in January of 2009, and Husband petitioned for dissolution of the marriage in June of 2012. Before the marriage, Husband owned an unencumbered farmhouse and several tractors, other motor vehicles, and tools. For her part, Wife owned a condominium and a log house encumbered by a mortgage, a property-tax lien, and IRS debt. At some point, Wife declared bankruptcy, and, as part of the proceeding, the trustee sold Wife's log house and distributed $8000 of the proceeds to Husband with Wife's consent.

At a hearing on the division of the marital estate, the trial court heard evidence that Wife had contributed very little to the marital estate during the marriage and had, in fact, dissipated it by losing large amounts of money gambling. The trial court also heard evidence that Wife had disposed of several pieces of Husband's personal property post-separation. Following the hearing, the trial court issued its order, in which it awarded Husband 80% of the marital estate. Wife contends that the trial court abused its discretion in ordering an unequal division of the marital estate and in not ordering that Husband return the $8000 he received from the sale of the log house in Wife's bankruptcy proceeding. Because we disagree, we affirm.

# Facts and Procedural History

Husband and Wife were married on January 23, 2009. Prior to the marriage, Husband owned an unencumbered farmhouse worth approximately $330,000,

which he had owned since 1977. Husband also owned thirty-eight tractors, several four-wheelers and quads, and various tools. Prior to the marriage, Wife owned a log house valued at $350,000 that was encumbered by a fifty-thousand-dollar mortgage, a property-tax lien, and IRS debt. Wife also owned a condominium in Park Forest, Illinois. Additionally, Wife had received her previous husband's 401K and pension, some furniture, and some dishes. Wife had owned a condominium in Lowell, Indiana, but sold it before the marriage for $129,000.

[4] At the beginning of the marriage, the parties lived in Wife's log house but moved into Husband's farmhouse in 2010. Wife made no contributions to the maintenance of the farmhouse or to the acquisition of any of the personal property therein. The $129,000 Wife obtained from the sale of her Lowell condominium was never used during the marriage by the couple; Husband testified that he suspects that it was "[h]igh time at the [casino] boat" or she gave it to her mother. Tr. p. 75. While living in the farmhouse with Husband, Wife rented out her log house for $1500 per month but did not apply the rent to the log house mortgage loan or pay property taxes with it.

[5] Husband, aged sixty-seven, received $5000 per month during the marriage in veteran's disability and social security. Wife testified that she earned $500 per week from the VFW for managing the poker slot machines plus $5 per hour (plus tips) for working the bar and running bingo games. Wife also received $750 per month in disability payments and received weekly child support from her previous husband. At some point, Husband bought Wife a brand-new hot

dog stand that she operated for a time as "Becky's Hot Dogs" in a Lowell park, but she did not want to work after "a little while" so the machine sat in Husband's barn. Tr. p. 92.

[6] At some point during the marriage, Husband received a telephone call from a person telling him that an uncle had died in China and left him some money. The person informed Husband that he was to inherit $3,000,000.00, but apparently required $49,000.00 to release it to Husband. Husband and Wife discussed the situation and visited Husband's banker together before Husband flew to China to complete the transaction. As it happened, the transaction was fraudulent and Husband ended up losing approximately $13,000.00.

[7] Husband and Wife both gambled during the marriage. Wife showed losses at AmeriStar Casino from 2010-2012 of approximately $48,000. Husband testified that his gambling losses approximately equaled his winnings. The only financial contributions made by Wife during the marriage were some gutters for her log house and some tickets to Great America Amusement Park. In January of 2012, Husband discovered that Wife had made several undisclosed withdrawals from his account and, without his permission, forged his name to checks. At some point, Wife filed for bankruptcy due to her pre-marital debt, and the bankruptcy trustee sold her log home to satisfy her creditors. Upon advice of counsel, Wife agreed that both she and Husband should receive $8000 from that initial distribution, leaving proceeds in the amount of $68,604.58, ultimately distributed to Wife.

[8] Husband petitioned to dissolve the marriage on June 20, 2012. Afterwards, Wife had temporary and exclusive possession of the farmhouse. During the summer of 2013, in anticipation of moving out, Wife sold several items out of the house. Wife convinced a male friend to come to the house and help her clear it out, telling him that everything in the house belonged to her and her son. According to the friend's testimony, he and Wife removed several of Husband's tractors, tools, come-a-longs, drills, and wrenches worth thousands of dollars and a transom worth $3500. Wife and the friend dismantled a camper that was on the property, stripped the wires, and sold it for scrap. Wife's son took some of Husband's farm equipment, namely, a Farmall 561 and three John Deere tractors and three or four of Husband's four-wheelers and quads.

[9] The trial court dissolved the marriage on September 21, 2015. The distribution of the marital estate was delayed because of Wife's pending bankruptcy petition. The trial court held the distribution hearing on October 17, 2016, and heard evidence concerning the parties' marriage. On December 16, 2016, the trial court issued its order dividing the marital estate, which provides, in part, as follows:

> 14. With regard to the marital estate, the Court finds and Orders that the estate consists of the property in Lowell known as the "farm house", the condominium in Illinois, the contents of the barn which include collections of various tractors, trailers, and weapons as well as the vast majority of the personal property, the proceeds from the log house and additional personal property that the Wife left at the farm house. The Court

has considered all of the statutory factors in I.C. §31-15-7-5 and has determined that a deviation is necessary in this case.

15. In addition, the Court has considered the fact that this was only a three (3) year marriage, that the disputes should have never risen to the level that it did and the fact that the parties have both been through divorces in the past and should have known better. In this case, it is easier to determine the status of the parties prior to the marriage and the Court is able to know what each party had because the parties' assets stem from prior dissolutions.

16. There is no doubt that Mr. Zander had all of his personal property prior to the marriage as he was awarded those assets in his first divorce.

17. The Court is considering dissipation both pre and post filing by the Wife and disposition of the property by the Husband.

18. There appears to have been dissipation both Pre and Post Decree by the Wife and disposition of property by the Husband.

19. The credible values of the property are as follows:
    a. Farm House      $335,000.00
    b. Log House       $68,604.58
    c. Condominium     $15,000.00

20. There is no credible evidence before the Court of the value of the property in the barn or the other personal property. As indicated, the Court believes that a deviation from the presumptive 50/50 is just and reasonable in this case and finds that Husband should receive the Farm House and all of the contents in the barn in its entirety.

21. The Wife is awarded the proceeds from the Log House sale as well as the Condominium in Illinois.

22. The Court acknowledges that this is a substantial deviation from the presumptive 50/50 division of assets but the Court believes it is justified not only on the statutory factors but also the short duration of this marriage.

23. Wife is awarded the items that are in the breeze way or porch at the Farm House as well as the storage unit located at the

Farm House.  Each party is awarded any vehicles that existed at the time of the marriage that are currently in their care and custody.

24. Other than as indicated above, Husband is awarded all of the contents at the Farm House.

25. Each party shall pay any debts in their individual names and any debts incurred after the date of the filing of this action.

Order pp. 4–6.  Wife contends that the trial court abused its discretion in ordering an unequal division of the marital estate and in failing to order Husband to return the $8000 he received from the proceeds of the sale of the log house in Wife's bankruptcy proceeding.

# Discussion and Decision

## I.  Whether the Trial Court Abused its Discretion in Dividing the Marital Estate

Wife contends that the trial court abused its discretion in awarding approximately 80% of the marital estate to Husband.  Indiana Code section 31-15-7-5 provides as follows:

The court shall presume that an equal division of the marital property between the parties is just and reasonable.  However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
(2) The extent to which the property was acquired by each spouse:
(A) before the marriage; or

(B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

[11] "Subject to the statutory presumption that an equal distribution of marital property is just and reasonable, the disposition of marital assets is committed to the sound discretion of the trial court." *Augspurger v. Hudson*, 802 N.E.2d 503, 512 (Ind. Ct. App. 2004).

> An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances, or the reasonable, probable, and actual deductions to be drawn therefrom. An abuse of discretion also occurs when the trial court misinterprets the law or disregards evidence of factors listed in the controlling statute. The presumption that a dissolution court correctly followed the law and made all the proper considerations in crafting its property distribution is one of the strongest presumptions applicable to our consideration on appeal. Thus, we will reverse a property distribution only if there is no rational basis for the award and, although the circumstances may have justified a different property distribution, we may not substitute our judgment for that of the dissolution court.

*Id*. (citations, quotation marks, and brackets omitted). "When ordering an unequal division, the trial court must consider all of the factors set forth in the

statute." *Love v. Love*, 10 N.E.3d 1005, 1012 (Ind. Ct. App. 2014) (citing *Eye v. Eye*, 849 N.E.2d 698, 701 (Ind. Ct. App. 2006)). "While a trial court abuses its discretion in considering a factor in isolation from the other four factors, the court is not required to explicitly address each factor." *Id.* (citing *Eye*, 849 N.E.2d at 702). "However, a court on review must be able to infer from the trial court's findings that all the statutory factors were considered." *Id.* (citing *Eye*, 849 N.E.2d at 703).

[12] Wife concedes that the trial court's identification and valuation of the marital assets was appropriate, namely the farm house ($335,000), the proceeds from the sale of the log house ($68,604.58), the Illinois condominium ($15,000), the contents of the barn at the farm house, and personal property Wife left at the farmhouse. Wife, however, contends that the trial court abused its discretion in essentially awarding her and Husband the property they individually owned before getting married. Wife argues that Husband did not overcome the presumption of an equal division of the marital estate in light of the parties' comingling of assets, dissipation and disposition of property during the marriage, and alleged contributions to marital finances.

## A. Comingling of Assets During Marriage

[13] Wife contends that the parties significantly comingled their assets, pointing to evidence that they put each other's names on titles to real estate, moved into Wife's log house at the beginning of their marriage, and that mortgage payments were made out of a joint checking account. We do not believe that these facts necessarily support an equal division of the marital estate in this

case. While it is true that the parties put each other's names on real properties they individually owned before marriage, it is not clear that this indicated any significant comingling. For example, while Husband's name was on the title of the log house, there is no evidence that Husband or the marital estate benefitted from Wife renting it out after moving into the farmhouse with Husband. Also, there does not seem to be much that can be made of the fact that the parties initially lived in the log house when they ultimately moved into the farmhouse and lived there for the majority of the marriage. Finally, the mere existence of a joint checking account does not necessarily mean that Wife made any significant contribution to it. Wife has not established that comingling of assets favors an equal division of the marital estate.

## B. Dissipation and Disposition

[14] Wife also contends that evidence of dissipation and dispositions of marital assets by both parties supports an equal division of the marital estate. The evidence in favor of the trial court's judgment, notably evidence of post-separation dissipation of personal property by Wife, supports a division favoring Husband. There is evidence to support the trial court's finding that there were "unusual dispositions also by to a certain extent husband[,]" specifically the inheritance scam that cost the parties approximately $13,000. Tr. p. 191. There is, however, evidence that Wife dissipated significantly more than Husband, pre- and post-separation. Evidence was admitted that prior to separation Wife lost approximately $48,000 gambling over a three-year period and made unauthorized withdrawals from Husband's account by forging his

name. The trial court also heard evidence that post-separation, Wife disposed of significant amounts of Husband's personal property from the Farmhouse, including tractors, tools, come-a-longs, drills, wrenches worth thousands of dollars, a transom worth $3500, a camper sold for scrap, a Farmall 561, three John Deere tractors, and three or four of Husband's four-wheelers and quads. The trial court noted that this was "clearly dissipation under the divorce statute" and noted that it had made it clear in previous orders that property was to be preserved. Tr. p. 192. In summary, the evidence touching on dissipation and disposition of marital assets favors an unequal division of the marital estate in Husband's favor.

## C. Contributions of Each Party

[15] Wife argues that the respective contributions by the parties to the marriage support an equal division of the marital estate. Husband, however, testified that Wife made no contributions to the maintenance of the farmhouse or to the acquisition of any of the personal property therein and that the only financial contribution made by Wife during the marriage was some gutters for her log house and some tickets to Great America Amusement Park. Although Wife points to some evidence to indicate that she did contribute to the marriage, the trial court was under no obligation to credit it. The evidence most favorable to the trial court's judgment supports an unequal division of the marital estate based on the parties' respective contributions. In the end, Wife's arguments regarding the trial court's unequal division of the marital estate are nothing more than invitations to reweigh the evidence, which we will not do.

## II. The $8000 Awarded to Husband

[16] Wife contends that even if the trial court did not abuse its discretion in unequally dividing the marital estate, it improperly allowed Husband to keep $8000 from the proceeds of the sale of the log house, which occurred during Wife's bankruptcy proceeding. Our review of the record does not reveal that Wife ever requested that the trial court order the return of the $8000 in question, so Wife is making this argument for the first time on appeal.

> It has long been the general rule in Indiana that an argument or issue presented for the first time on appeal is waived for purposes of appellate review. *See, e.g.*, *Plank v. Cmty. Hospitals of Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013) ("[A]ppellate review presupposes that a litigant's arguments have been raised and considered in the trial court."); *Ind. Dep't of Envtl. Mgmt. v. Raybestos Prods. Co.*, 897 N.E.2d 469, 474 (Ind. 2008) ("Generally, an appellate court will not review an issue that was not presented to the trial court."), *corrected on reh'g,* 903 N.E.2d 471 (Ind. 2009); *Troxel v. Troxel*, 737 N.E.2d 745, 752 (Ind. 2000) ("A party may not raise an issue for the first time in a motion to correct error or on appeal."); *Franklin Bank & Trust Co. v. Mithoefer*, 563 N.E.2d 551, 553 (Ind. 1990) ("A party cannot change its theory and on appeal argue an issue which was not properly presented to the trial court."); *Indianapolis Newspapers, Inc. v. Fields,* 254 Ind. 219, 260, 259 N.E.2d 651, 670 (1970) ("We do not review issues presented for the first time on appeal except to avoid grave injustice.").

*Ind. Bureau of Motor Vehicles v. Gurtner*, 27 N.E.3d 306, 311 (Ind. Ct. App. 2015). Because Wife makes this specific argument for the first time on appeal, she has waived it for appellate review.

## Conclusion

[17] We conclude that Wife has failed to establish that the trial court abused its discretion in ordering an unequal division of the marital estate or in not ordering that Husband return the $8000 he received from the sale of Wife's log house. Consequently, we affirm the trial court's order disposing of the marital estate.

[18] The judgment of the trial court is affirmed.

Brown, J., and Pyle, J., concur.